Benjamin Altman, J.
Defendant is accused of violating subdivision 3 of section 165.15 of the Penal Law. The section, entitled “ Theft of services ”, provides that a person is guilty of theft of services when “ 3. with intent to obtain railroad, subway, bus, air, taxi or any other public transportation service without payment of the lawful charge therefor, or to avoid payment of the lawful charge for such transportation service which has been rendered to him, he obtains or attempts to obtain such service or avoids or attempts to avoid payment therefor by force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay. ’ ’
The defendant, Michael Lee, is alleged to have engaged a limousine for hire from the Alpha Cadillac Corporation of Manhattan bn August 5, 6, and 8 of 1972, and to have unjustifiably failed to pay for the services rendered. The People and the defendant have stipulated that the Alpha Cadillac Corporation is engaged in the business of providing private limousine services and reserves to itself the right to refuse service to members of the public it does not wish to serve.
Defendant moves to dismiss the information on the ground that the statute has no application to him because the failure to pay a private limousine service, in contrast to the failure to pay for subway or taxi transportation, does not give rise to a violation of the statute.
The issue which arises is whether a private limousine service falls within the phrase used in the statute of ‘ ‘ any other public transportation service.”
The statute itself does not define the phrase “public transportation. ’ ’ Therefore, case and statutory law must be examined in order to determine whether or not a private limousine service is “ public transportation ” as that term is used in the Penal Law.
In Terminal Taxicab Co. v. District of Columbia (241 U. S. 252), the United States Public Utilities Commission was given power, pursuant to statute, to regulate all public utilities. The term, public utility, embraced every common carrier and common carrier was defined as “ ‘ every corporation * * * controlling or managing any agency or agencies for public use for the conveyance of persons or property within the District of Columbia for hire.’” Part of the company’s business consisted of *241 furnishing autos from its central garage on orders, generally by telephone. It allegedly had the right to refuse service and would do so if payment was uncertain. It did advertise extensively and it appeared that the company would accept any seemingly solvent customer.
The court held that the fact that the company was involved with the public did not mean that it could be regarded as a public utility. The court compared the businesses of a shopkeeper and a livery stable and held that neither calling could be considered “ public ” as the word was commonly understood because of the ability of both to refuse to sell to members of the public. Finding little difference between the operations of an ordinary livery stable and that of the Terminal Company, the court held that the company could not be considered a public utility. The right ' not to sell to members of the public removed the company from being considered a public utility. The reasoning of the court in Terminal (supra) is applicable here. The ability to refuse to sell a service to a member of the public even though he may have the fare, brings or helps lead to the conclusion that a private limousine service is not a ‘ ‘ public transportation service” as used in the Penal Law. There is no requirement that the public be served indiscriminately. The private limousine service may refuse to provide services to any individual it wishes not to serve.
In addition to not being a public utility (see Terminal Taxicab Co. v. District of Columbia, 241 U. S. 252, supra), the type of vehicle we have here, a private limousine, has never been considered a common carrier, that is, a means of transportation open to the public at large. A holding out to the general public or to all of a segment of the general public is what makes one a common carrier. The essential difference between the common and private carrier is that the latter does not undertake to transport for the general public, rather, he undertakes to provide transportation by motor vehicle under special and individual contracts or agreements (Matter of Motor Haulage Co. v. Maltbie, 293 N. Y. 338; Reliable Textile Co. v. Deptula Trucking Co., 37 A D 2d 952 [1st Dept.]). And, it has been suggested that a vehicle for hire which was stationed in a garage and employed by and on special call for special purposes (much as a private limousine service would be) would, unlike a standard taxicab required to serve any member of the public, have the character of a liveryman and would not be a common carrier (Anderson v. Fid. & Cas. Co., 228 N. Y. 475, 489 [concurring *242 opn., Hiscock, Oh. J., in which all Judges concurred]) — a form of transportation open to the public at large.
That defendant is not considered a common carrier seems to be borne out by the Transportation Law. Subdivision 22 of section 2 thereof states that a “ 1 Contract carrier of passengers by motor vehicle ’ means a person or corporation who or which engages in the transportation by motor vehicle of passengers for compensation, other than in the operation of a bus line.” The statute then goes on to exclude from- the meaning of the subdivision “ motor vehicles operated in what is commonly knowp. as taxicab service ”. Thus while taxicabs are expressly excluded from being contract (private) carriers, private limousine services are not so excluded. It is thus recognized that such a mode of transportation is not considered something open to the public at large, since, by definition, a contract carrier does not hold himself out to the general public as a whole or to the whole of any segment of the public (see Matter of Motor Haulage Co. v. Maltbie, 293 N. Y. 338, supra).
It is interesting in connection with this discussion of common carriers that in a case involving a statute which provided that motor trucks used for the “ public transportation ” of freight were required to secure a permit, a court has held that one not a common carrier, did not fall within the classification of public transportation (State ex rel. Bd. of R. R. Comrs. v. Carlson, 217 Iowa 854).
It is ¡of course true that, to an extent, a private limousine service does affect the public interest (see Transportation Law, § 200 et seq.), since it uses public roads and those who contract for its services are members of the public. However, it would seem that ‘1 affecting the public interest ’ ’ does not make one a 11 public transportation service ’ ’ within the meaning of the Penal Law. First, by case and statutory law, a private limousine service is not a common carrier. Thus, it is not a means of transportation which one considers open to any member of the public who has the fare. Second, the forms of transportation specified in subdivision 3 of section 165.15 of the Penal Law (e.g., taxi, subway, railroad) are all forms of transportation which are recognized as common carriers of passengers. All the modes of transportation listed in the statute fit within the definition of a common carrier as given in Matter of Motor Haulage v. Maltbie (supra). Applying the rule of construction that where words of specific purport are followed by words of general import, the application of the words of general import is confined to the subject matter disclosed in the words of specific *243 purport with which it is connected (see Statutes, § 239, suhd. b), the conclusion that is reached is that a private limousine service is not a public transportation service within the meaning of the Penal Law since unlike the enumerated forms of transportation enunciated as public transportation, it is not a common carrier.
Accordingly, the motion to dismiss is granted.