OPINION
{¶ 1} Plaintiff-appellant, David W. Conver, administrator of the estate of Lori McDonough ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas granting defendants-appellees' motions for summary judgment. The remaining defendants-appellees in this case are Sky Financial Group, Inc., Sky Bank-Ohio Region (collectively "Sky Bank"), Aladdin World Enterprises, Inc. ("Aladdin") and Robert Willie ("Mr. Willie").[1] For the reasons that follow, we affirm.
 {¶ 2} This case arises out of the tragic death of Lori McDonough ("decedent"). On Friday, September 17, 1999, she attended a bachelorette party for bride-to-be, Melissa Weaver, at the residence of Lori Nourse. Other attendees included Dawn Warren, Kelli Griffith, and Kathy Herzog. Ms. Herzog arranged for Aladdin, a limousine service, to transport the women that evening.[2]
 {¶ 3} During the course of the evening, the women drank and danced at several bars. At some point, the women left the Brewery District to go to a bar located on Bethel Road. While en route, one of the women asked Mr. Willie to stop at an ATM. Mr. Willie selected Sky Bank located at 1800 Bethel Road.
 {¶ 4} The drive-thru ATM at Sky Bank is located in a small building separate from the main bank building. The ATM area was illuminated but everything else in the bank's vicinity was dark. Mr. Willie pulled the limousine in between the ATM and the bank building, with the limousine facing Bethel Road, its headlights left on. He then opened the rear passenger door to allow the women to alight from the limousine.
 {¶ 5} All of the women exited the limousine, except Ms. Weaver. Some of the women used the ATM, including decedent, while others went to a nearby area containing bushes to relieve themselves. Mr. Willie went to smoke a cigarette while he waited for them to return. While smoking, Mr. Willie noticed a stairwell along the eastern side of the bank building. These steps were approximately 25 yards from the limousine.
 {¶ 6} After a few minutes, Ms. Weaver decided to exit the limousine as she had become bored sitting in it by herself. As she was exiting, the decedent was returning from the ATM. Decedent passed by Mr. Willie and told him she had to go to the bathroom. Decedent also stated this to Ms. Weaver. Ms. Weaver asked her if she could just wait since the next bar was just down the road. Decedent said she could not wait. Ms. Weaver directed decedent to an area of bushes near the main bank building. Decedent then "scampered" off to relieve herself. At the same time, the other women were returning to the limousine. Mr. Willie again opened the rear passenger door to ensure the women safely entered the limousine. Simultaneously, Mr. Willie noticed decedent go toward the area of the stairwell and he said "don't." He returned his attention to the women re-entering the limousine and said nothing further to decedent.
 {¶ 7} Several minutes passed before Mr. Willie told someone that he thought decedent had fallen, although he did not see decedent fall nor did he hear anything to indicate that this happened. One of the women responded by telling Mr. Willie to leave her alone since she was going to the bathroom. About 30 seconds later, Mr. Willie repeated his concern and two of the women walked over to the area next to the bank where they found decedent lying at the bottom of the stairwell. The women noticed decedent was having difficulty breathing, so they told Mr. Willie to call 911, which he did immediately. Decedent was taken to the hospital. Mr. Willie drove the rest of the women back to the Nourse residence. Decedent died eight days later from injuries sustained in the fall.
 {¶ 8} Appellant filed suit against defendants on September 12, 2001. Appellees filed motions for summary judgment that were ultimately granted by the trial court. The trial court found that while decedent was using the ATM, she was a business invitee. (Trial court opinion at 11.) However, decedent exceeded the scope of her invitation when she left the ATM area to find an area to relieve herself. Id. The trial court found that decedent became a licensee at that point. Id. Sky Bank, the licensor, owed her no duty except to refrain from willful and/or wanton conduct and there was no evidence of such conduct on the part of Sky Bank. Id. at 12. With respect to Aladdin and Mr. Willie's motion for summary judgment, the court found that when the property owner or possessor is a common carrier, its duty is to exercise the highest degree of care for the safety of its passengers. Id. at 7. The court found that because the decedent and the other women alighted safely from the limousine in the bank parking lot, the duty ended and the passenger-common carrier relationship terminated. Id. at 9. The court further held that absent a special relationship between the parties, there was no duty to affirmatively act for decedent's aid or protection. Id. As for the breach of contract claim with respect to Aladdin and Mr. Willie, the trial court held that appellant was a third-party beneficiary but there was no evidence that any breach occurred. Appellant filed the instant appeal.
 {¶ 9} Appellant asserts the following seven assignments of error:
 {¶ 10} "I. The trial court erred in granting appellee's motion for summary judgment.
 {¶ 11} "II. The trial court erred in determining that decedent was not a business invitee on the premises.
 {¶ 12} "III. The trial court erred in finding that appellee Sky Bank did not act in a willful or wanton manner.
 {¶ 13} "IV. The trial court erred in not considering the cause of comparative negligence.
 {¶ 14} "V. The trial court erred in finding that the common carrier/passenger relationship did not exist at the time of [decedent's] fall.
 {¶ 15} "VI. The trial court erred in finding that appellees, Aladdin and Willie, acted reasonably.
 {¶ 16} "VII. The trial court erred in finding that appellees, Aladdin and Willie, did not breach the contract."
 {¶ 17} Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates the following: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183. In the summary judgment context, a "material" fact is one that might affect the outcome of the suit under the applicable substantive law. Turner v. Turner (1993),67 Ohio St.3d 337, 340. When determining what is a "genuine issue," the court decides if the evidence presents a sufficient disagreement between the parties' positions. Id.
 {¶ 18} Further, when a motion for summary judgment has been supported by proper evidence, the nonmoving party may not rest on the mere allegations of the pleading, but must set forth specific facts, by affidavit or otherwise, demonstrating that there is a genuine triable issue. Jackson v. Alert Fire Safety Equip., Inc. (1991),58 Ohio St.3d 48, 52. If the nonmoving party does not demonstrate a genuine triable issue, summary judgment shall be entered against that party. Civ.R. 56(E).
 {¶ 19} Since appellant's first assignment of error is a general statement of error, it will be summarily addressed at the end of this opinion. Appellant's second and third assignments of error deal with the status of decedent on Sky Bank's property and will be addressed together.
 {¶ 20} In Ohio, the status of the person who enters upon another's land determines the scope of the legal duty the landowner owes to the entrant. Gladon v. Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 312, 315. An invitee is one who enters the premises of another by express or implied invitation for some purpose that is beneficial to the owner. Id. The invitation includes the use of parts of the premises as the visitor reasonably believes is held open to her. Wanko v. Downie Productions, Inc. (Aug. 24, 2000), Franklin App. No. 99AP-1047. Therefore, the status of an invitee is not absolute but is limited by the landowner's invitation. Gladon, supra. "If the invitee goes outside of the area of his invitation, he becomes a trespasser or a licensee, depending upon whether he goes there without the consent of the possessor, or with such consent." Id., quoting 2 Restatement of the Law 2d, Torts (1965) 181-182, Section 332, comment l. Determining the scope of the invitation is an objective inquiry based on how a reasonable person would interpret "the purpose for which the land is held open or the particular business purpose for which the invitation is extended." Wanko, supra, citing Conniff v. Waterland, Inc. (1997), 118 Ohio App.3d 647,651.
 {¶ 21} If the entrant is an invitee, the landowner must exercise ordinary care for the invitee's safety and protection. Gladon, supra, at 317. However, a business owner is not an insurer of an invitee's safety. Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203. Further, there is no duty to protect an invitee from known dangers, meaning dangers that are so obvious and apparent that the invitee may reasonably be expected to discover them and protect herself against them. Id. at 203-204.
 {¶ 22} A licensee is one who goes upon the land of another by permission or acquiescence of the landowner for the licensee's own pleasure or convenience. Wanko, supra. Whereas, a trespasser is one who, without express or implied permission or acquiescence, enters private property purely for her own purposes and convenience. Id. Further, the determining fact as to whether someone is a trespasser "is the presence or absence of a privilege to enter or to remain on the land, and the status of an accidental trespasser is still that of a trespasser." Gladon, at 317. If the status of the entrant is one of licensee or trespasser, then the landowner's duty is only to refrain from willful and wanton conduct.
 {¶ 23} For example, in Herron v. Interstate Brands Corp. (Jan. 25, 1995), Hamilton App. No. C-930782, Mr. Herron went to Interstate to make a delivery of cooking oil. While the cooking oil was being pumped from his truck to the storage tanks in the loading dock area, Mr. Herron went into a break room used by Interstate employees to get a cup of coffee, with another delivery person. To get to the room, the two men used a freight elevator with two sections that had to be opened and closed manually. When the appellant used the same elevator on his way back, he lost his balance while trying to close the door and the two sections closed on his right hand, crushing bones in several fingers.
 {¶ 24} The court held that while the appellant was out on the loading dock he was a business invitee. Herron, supra. However, the appellant lost his status of invitee and became a licensee when he exceeded the scope of the invitation and went into the building for a "purely personal nature." Id. The court stated "the trip was taken only because [Mr.] Herron chose to stray beyond the scope of his invitation as soon as he entered the building, and that he remained beyond that scope until he actually returned to the place where the oil was being delivered." Id. Therefore, the duty owed to the appellant at the time of his injury was to refrain from willful and wanton conduct. Id.; Wanko, supra (no evidence to show that visitors to the food festival were given any permission to climb on golf carts for personal frolic; no reasonable person would interpret the purpose for which the parking lot was held open to include playing on unattended golf carts).
 {¶ 25} In the case at bar, the trial court held that decedent was a business invitee while she was using the ATM at Sky Bank. However, she exceeded the scope of that invitation and became a licensee when she ventured off into the dark in order to relieve herself. We agree with the trial court that decedent was in fact an invitee while she used the ATM. The ATM area was illuminated and in working condition and the bank impliedly consented to have visitors for the purpose of obtaining money from the ATM, even after normal banking hours. Therefore, the bank owed a duty to exercise ordinary care to make the premises reasonably safe for decedent with respect to the illuminated area. In other words, the illuminated area was that part of the premises where decedent would be reasonably expected to go. The bank complied with that duty. Decedent was not injured while going to the ATM, using it or returning from the ATM.
 {¶ 26} We also agree decedent exceeded the scope of her invitation when she decided to find an area to go to the bathroom. However, we find decedent became a trespasser rather than a licensee. The bank gave implied permission to be on the premises after hours for ATM purposes only. Given these facts, we find that decedent was a trespasser because Sky Bank did not give decedent consent to go in a dark area after hours and use the premises as a public restroom. The darkened stairwell into which decedent fell was approximately 25 yards from the ATM, not near any other part of the building frequented by anyone after business hours. See Conniff at 652-653 (finding that appellant was mere trespasser where she entered campground's water park after midnight to use the water slide and did not have implied permission; the slide was separated from campgrounds, there were no lights on the slide, no attendants were on duty, the water had been shut off, and the central stairs were enclosed by a fence).
 {¶ 27} Appellant argues it is reasonably foreseeable that business invitees who use the ATM may go to other areas of the premises, particularly in light of the fact that trash was scattered near the stairwell. However, the court finds that at 11:45 at night, the bank had no reason to believe that anyone would be using the premises for any reason other than the ATM. Nor would a reasonable person interpret the purpose for which the bank premises were held open to be other than the ATM and certainly not to be used as a public restroom. Since decedent was a trespasser when she exceeded the scope of her invitation, the bank's duty was to refrain from willful and/or wanton conduct. Therefore, the next issue is whether the bank acted in a willful and/or wanton manner.
 {¶ 28} Appellant argues that the bank acted willfully and/or wantonly because the stairwell was hidden by bushes, not guarded, and not illuminated. Appellant also contends the bank was aware people went in the area because there was garbage near the stairwell. We disagree. Willful conduct involves an intent, purpose or design to injure. Gladon, supra. Wanton conduct involves the failure to exercise any care whatsoever toward those who are owed a duty of care, and the failure to exercise any care occurs under circumstances where there is a great probability that harm will result. Id.
 {¶ 29} Here, appellant offers no evidence to suggest Sky Bank set out to intentionally injure decedent. Moreover, there is no evidence to suggest there was a great probability harm would result. Since the ATM was the only banking operation available at this time of night, there was not a great probability anyone would be near the stairwell let alone fall down the stairs. The fact that nothing was illuminated other than the ATM weighs against liability. Further, Scott Lanning, Sky Bank's branch sales manager, testified the stairwell was an "emergency" exit for employees who worked in the basement of the bank building and is marked as an emergency exit. Therefore, there is no evidence that Sky Bank engaged in willful or wanton misconduct.[3] Accordingly, appellant's second and third assignments of error are overruled.
 {¶ 30} In the fourth assignment of error, appellant maintains that the trial court erred in not considering the cause of comparative negligence. Appellant is essentially arguing that even if appellant was herself negligent, e.g., failing to take care in the darkness, she is still entitled to recover for the proportionate share of the bank's negligence. We find, as the trial court did, issues of comparative negligence are not reached if the court determines that the landowner owes no duty. Whitelaw v. Fifty-Five Restaurant Group, Ltd. (Jan. 25, 2001), Franklin App. No. 00AP-668, citing Mustric v. Penn Traffic Corp. (Sept. 7, 2000), Franklin App. No. 00AP-277. Therefore, in light of the court's ruling that Sky Bank did not breach any duty owed to decedent, the court does not reach the issue of comparative negligence. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 31} In the fifth and sixth assignments of error, appellant contends that the trial court erred in finding that the common carrier/passenger relationship did not exist at the time of decedent's fall, and erred in finding Aladdin and Mr. Willie acted reasonably. The first step in our analysis is to determine whether Aladdin is a common carrier or a private carrier. This determines the duty Aladdin and Mr. Willie owed to decedent as a passenger. The trial court assumed that Aladdin was a common carrier. However, for the reasons set forth below we find Aladdin is a private carrier.
 {¶ 32} A "common" carrier is one who undertakes to transport persons or property from place to place, for hire, and holds itself "`out to the public as ready and willing to serve the public indifferently.'" Harper v. Agency Rent-A-Car, Inc. (C.A. 5, 1990), 905 F.2d 71, quoting Burnett v. Riter (Tex.App. 1925), 276 S.W. 347, 349; 13 Ohio Jurisprudence 3d (1995) 567, Carriers, Section 1. The common carrier must hold "itself ready to serve the public impartially to the limit of its capacity." Id. For example, taxicabs are common carriers under Ohio law. Korner v. Cosgrove (1923), 108 Ohio St. 484. In contrast, a private carrier is one that undertakes by special agreement or contract to transport a definite number of persons for a special undertaking. Id.; Columbus-Cincinnati Trucking Co. v. Public Utilities Comm. (1943),141 Ohio St. 228; Spath v. Dillon Enterprises (D. Mon. 1999),97 F. Supp.2d 1215, 1218 (defendant was a private carrier where it contracted to transport individuals on white water rafting trips; this was by nature a special agreement).[4] The controlling factor in determining the status of a carrier "is its public profession, or holding out, by words or course of conduct, as to the service offered or performed. The issue of whether a particular person or instrumentality is a common carrier is generally a question of law for the court." 13 Ohio Jurisprudence 3d (1995) 567, Carriers, Section 1; Harper, supra.
 {¶ 33} A common carrier's duty is to "exercise the highest degree of care for the safety of its passengers consistent with the practical operation of its business." Bodley v. U.S. Air, Inc. (Dec. 9, 1997), Franklin App. No. 97APE03-430. Included in this duty is to provide a reasonably safe place for its passengers to alight and a duty to warn passengers against dangerous agents or conditions known to or reasonably ascertainable by the carrier. Feldman v. Howard (1967), 10 Ohio St.2d 189,192; James v. Wright (1991), 76 Ohio App.3d 493, 495. However, the foregoing duty applies "only to perils which the passengers [themselves] should not be expected to discover or protect themselves against." Id.
 {¶ 34} In contrast, a private carrier's duty is simply that of reasonable ordinary care. Harper; Spath, supra (recognizing lessened duty of private carriers); Long v. Illinois Power Co. (1989),187 Ill. App.3d 614, 629-630 (discussing distinction between private carriers and common carriers and heightened standard of care for common carriers). What is reasonable may vary depending on the situation. Nichols v. TransCor America, Inc. (June 25, 2002), Tenn.Ct.App. No. 98C-2177.
 {¶ 35} Although the court did not find any Ohio cases to provide guidance as to whether a limousine service is a common or private carrier under these facts, the court finds Aladdin is a private carrier. Aladdin does not hold itself out as ready and willing to transport any member of the public for hire. To the contrary, Aladdin makes special arrangements with its passengers. The very purpose of this particular limousine company is to provide services for hire under special and individual contracts or agreements. See People v. Lee (1972), 71 Misc.2d 239, 241
(discussing that a limousine for hire was more akin to a private carrier than a common carrier). Accordingly, as a private carrier, Aladdin's duty to the women was to exercise ordinary care. Galliher v. Campbell (App. 1954), 69 Ohio Law Abs. 378.
 {¶ 36} Appellant argues this duty continued while the women were at the bank, including the time when the women were attending to ATM functions and restroom breaks. We disagree. Aladdin, via Mr. Willie, satisfied its duty of ordinary care when the women arrived safely at the bank and alighted from the limousine in order to use the ATM, the very purpose for which they stopped. The duty arises again once the passengers return to the vehicle but the carrier is not responsible for dangers that arise in the interim which are not reasonably within the carrier's control. Feldman at 192-193. To extend the duty to the time when the women were outside the limousine attending to their own needs would make Aladdin an insurer of passengers' safety.
 {¶ 37} Appellant also maintains Aladdin and Mr. Willie acted unreasonably in failing to warn decedent of the stairwell. As stated previously, when decedent was making her way back from the ATM and "scampered" off to find an area to relieve herself, Mr. Willie said "don't." (Robert Willie Tr. at 67.) Appellant argues Mr. Willie knew about the stairwell (which Mr. Willie admits), and maintains he should have told decedent not to go near it.
 {¶ 38} Unfortunately, absent a special relationship between decedent and Mr. Willie and/or Aladdin, there is no duty to act affirmatively for another's aid or protection. Estate of Morgan v. Fairfield Family Counseling Ctr. (1977), 77 Ohio St.3d 284, 293. This is true even if the failure to act may result in foreseeable harm. Switter v. Searle, Medina App. No. 02CA0069-M, 2003-Ohio-2715, citing Jackson v. Forest City Ent., Inc. (1996), 111 Ohio App.3d 283, 285, citing Restatement of the Law 2d, Torts (1965), 116, Section 314. Relationships that result in a duty to protect others include: common carrier and passenger, innkeeper and guest, possessor of land and invitee, and employer and employee. Jackson, supra, citing Restatement, supra.
 {¶ 39} As already determined, Aladdin was not a common carrier. Therefore, no special relationship existed between decedent and Mr. Willie or Aladdin at the time of the fall. Mr. Willie testified that at the time decedent "scampered" off, all the other women were returning to the vehicle. The court finds that his responsibility was to make sure the women entered the limousine safely. Accordingly, Mr. Willie did not act unreasonably under the circumstances. Therefore, appellant's fifth and sixth assignments of error are overruled.
 {¶ 40} In the seventh assignment of error, appellant claims the trial court erred in finding that Aladdin and Mr. Willie did not breach the contract. In order to state a claim for breach of contract, appellant must show the existence of a contract, performance by the plaintiff, a breach by the defendant, and resulting loss or damage to the plaintiff from the breach. Here, there is no question that a contract existed between Ms. Herzog and Aladdin. However, in order for decedent to bring a cause of action on the contract, appellant must demonstrate decedent was a third party beneficiary to the contract. The trial court found decedent was in fact a third party beneficiary. We agree.
 {¶ 41} Ohio follows the Restatement of the Law on Contracts, Section 302, in determining whether an individual is a third party beneficiary to the contract. Hill v. Sonitrol of Southwestern Ohio, Inc. (1988), 36 Ohio St.3d 36, 40. The Hill court listed the factors outlined in the Restatement as follows:
 {¶ 42} "`(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either:
 {¶ 43} "`(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
 {¶ 44} "`(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
 {¶ 45} "`(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.' "
 {¶ 46} The contract at issue provided for the use of the limousine for the bachelorette party, namely to go "bar hopping." The language of the contract refers to the client or "any of their party." This court finds based on the language, decedent was an intended beneficiary.[5]
Decedent was present in the limousine and since it was a party, the circumstances indicate she was intended to receive the benefit of the promised performance. Therefore, we must turn to the issue of whether the contract was breached. Appellant argues the intent of the contract was that Aladdin via Mr. Willie would provide safe transportation for the women. Appellant claims the contract was breached because it failed to do so. The contract provided that Aladdin via Mr. Willie would pick the women up at 9:00 p.m. and drop them off at 1:00 a.m. This obligation was fulfilled. While a very tragic accident took place during the evening, Aladdin and Mr. Willie fulfilled their contractual obligations. Accordingly, appellant's seventh assignment of error is overruled.
 {¶ 47} In conclusion, the judgment of the trial court is affirmed. There are no genuine issues of material fact with respect to any claims. First, at the time of decedent's fall, she was a trespasser and not an invitee on Sky Bank's property. Therefore, the only duty owed to her was to refrain from willful and wanton conduct. There is no evidence Sky Bank acted in a willful or wanton manner. The issue of comparative negligence is not reached because Sky Bank did not breach any duty owed to decedent.
 {¶ 48} Second, we find that Aladdin is a private carrier and owed decedent the duty of ordinary care. Aladdin and Mr. Willie satisfied that duty at the point when the women alighted safely from the limousine at the bank property.
 {¶ 49} Third, Aladdin and Mr. Willie did not act unreasonably under these circumstances. The law does not impose a duty to warn another unless a special relationship exists. Here, no special relationship existed between decedent and Aladdin or Mr. Willie at the time of the fall. Hence, no duty existed to warn decedent of the darkened stairwell.
 {¶ 50} Finally, Aladdin and Mr. Willie did not breach the contract to which decedent was a third party beneficiary. The contract provided for transportation to and from each destination between the hours of 9:00 p.m. to 1:00 a.m. The driver fulfilled these obligations. Unfortunately this was an accident. The evening in question ended in tragedy but not due to the fault of any appellee.
 {¶ 51} Based on the foregoing, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and LAZARUS, JJ., concur.
[1] An original defendant was EKH Company, the owner and lessor of the property at issue in this case. The trial court ruled that because EKH was not in control or possession of the premises on the date in question, it could not be liable for decedent's death. (Trial court opinion at 15, citing Berkowitz v. Winston [1934], 128 Ohio St. 611; Cooper v. Roose [1949], 151 Ohio St. 316.) The appellant has not appealed this aspect of the trial court's decision.
[2] When Mr. Willie arrived at the house, he went over the contract of service with Ms. Herzog, she signed it and he gave her a copy. The contract states that it was the womens' intent to go "bar hopping."
[3] The trial court went on to conclude that darkness itself is always a warning of danger; for one's own protection, it must not be disregarded. A person's disregard of the darkness may itself preclude the recovery of damages for personal injuries. Jeswald v. Hutt (1968),15 Ohio St.2d 224. However, because we find that the bank did not breach any duty to appellant, we do not decide that issue here.
[4] R.C. 4921.02, dealing with the general powers of the Public Utilities Commission to regulate certain common and private carriers, includes in its definition of common carrier "every corporation, company * * * engag[ed] in the business of transporting persons or property, or the business of providing or furnishing such transportation service, for hire, whether directly or by lease or other arrangement, for the public in general." (Emphasis added.) In contrast, R.C. 4923.02 which defines a private motor carrier does not use the language "for the public in general."
[5] Aladdin and Mr. Willie do not dispute the trial court's finding that decedent was an intended beneficiary of the contract.