CONNIFF, Appellant,

v.

WATERLAND, INC., d.b.a. Pioneer Waterland Park, Appellee, et al.

[Cite as *Conniff v. Waterland, Inc.* (1997), 118 Ohio App.3d 647.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 96–G–1975.

Decided March 10, 1997.

*David A. Forrest* and *William J. Shramek,* for appellant.

*Gary D. Hermann* and *Thomas P. Marotta,* for appellee.

NADER, Judge.

This is an accelerated calendar case. Plaintiff-appellant, Eileen Conniff, appeals from summary judgment entered in the Geauga County Court of Common Pleas in favor of defendant-appellee, Waterland, Inc.

The evidence submitted both for and against appellee's motion for summary judgment, when viewed in a light most favorable to appellant, the nonmovant, reveals the following. On Friday, August 23, 1994, appellant and a group of her friends went camping at the Pioneer Waterland, an amusement park owned and operated by appellee. Appellant contributed $10 towards the campsite registration fee. Other persons in the group consumed significant quantities of alcohol that night, but appellant drank only half of one wine cooler.

Sometime after midnight, the group decided to make use of a nearby waterslide. The two-story slide is actually a part of the water park, to which the campgrounds are contiguous. It consists of a central tower containing a staircase and a series of chutes. A pair of speed chutes extends from the central tower northward. These are straight slides that descend at a steep angle, level out, then descend again, ending in a shallow landing pool. Other chutes extend from the central tower southward, and wind their way around and around until they empty into a separate pool. When the slides are in operation, water from a small pump house lying just to the east flows down the surface of the slides in order to facilitate passage. A chainlink fence runs from the pump house and encircles the

central tower. Access to the stairs leading up to the slides is restricted by swinging gates located on opposite sides of the tower. Two night watchmen testified that it was standard operating procedure to padlock the gates at night.

The group walked a short distance through a wooded area, then across an open field to reach the water park. Appellant found when they came to the enclosure containing the waterslide that no water was flowing down the slide, the lights were mostly turned off, except for a small light near the pump house, and no attendants were on duty. The group circled the eastern edge of the enclosure and came to the gate at the north side. When a member of the group tested the gate, he found it to be unlocked.

Campers are not permitted in the water park after hours, but there was testimony to the effect that appellant was not aware of this fact. And, although it was late, appellant claimed that she thought she was permitted to use the slide. In her deposition, she testified that she climbed the stairs and slid down a speed chute once, but she came to a skidding halt as her skin and clothing caught on the dry surface of the slide.

The second time, she decided to use a mat stored somewhere near the stairway. Just as she settled herself for the second descent, Michael Skrypek, a member of the group, asked if he could ride on the mat with her. Appellant agreed, and they shoved off together. This time, the mat shot too quickly down the slide. The couple skipped like a stone across the shallow pool at the bottom runway, then collided forcibly with the opposite bank. Both riders broke their backs; appellant was left paralyzed from the waist down.

Appellant and Skrypek filed suit against appellee, alleging that appellee was negligent in failing to provide adequate security, failing to properly secure the slide, and maintaining a dangerous latent condition on its premises. The trial court granted appellee's motion for summary judgment.[1] Appellant appealed, asserting in a single assignment of error that "[t]he trial court committed prejudicial error in granting summary judgment in favor of [appellee]." Appellant raises two issues for our deliberation in connection with the assignment:

"1. Whether reasonable minds could differ, based upon the evidence submitted by [appellant], as to whether [appellant] exceeded the scope of her invitation upon [appellee]'s premises.

"2. Whether reasonable minds could differ, based upon the evidence submitted by [appellant], as to whether [appellant] was exposed to hidden dangers or risks created by [appellee]'s acts of negligence."

---

1. Skrypek did not appeal the trial court's judgment and is no longer a party.

A cause of action predicated on negligence and/or premises liability must be sustained by proof as to a number of essential elements, the foremost of which is that the defendant/landowner owed a duty to the plaintiff. The common-law duty owed to a person present on another's land depends upon the status of the entrant. *Shump v. First Continental–Robinwood Assoc.* (1994), 71 Ohio St.3d 414, 417, 644 N.E.2d 291, 294–295. Here, there is no question that, after paying the entrance fee for the campsite, appellant was a business invitee.

However, the status of an invitee is not absolute but is limited by the scope of the landowner's invitation. *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287, 291–292. Generally, the visitor enjoys the status of an invitee while she is on the part of the land to which the invitation extends and conforms her conduct to the terms of the invitation. *Id.*

Under the first issue presented, appellant contends that the trial court had incorrectly ruled that she exceeded the scope of her invitation. We disagree.

The test for construing the scope of the invitation is objective and would depend upon how a reasonable person would interpret the purpose for which the land is held open and for which the possessor desires visitors to enter. *Blair v. Ohio Dept. of Rehab. & Corr.* (1989), 61 Ohio Misc.2d 649, 656–657, 582 N.E.2d 673, 677–678. Relevant considerations include the possessor's conduct, the nature of the business conducted on the premises, and the arrangement and design of the premises. *Id.*

Appellant paid an admission fee and obtained an invitation to use the campgrounds, which were separated from the main water park by a series of buildings, attractions, a batting cage, and the wooded area next to the camp site. The area around the waterslide was paved, which suggests that it is separate from the undeveloped camping area. The design of the premises thus suggests that the water park was obviously separate from the campgrounds. Also, the nature of the activities intended to take place in the different areas supports the conclusion that the owner of the premises did not intend to invite the campers to use the waterslide. Usually, amusement parks are staffed by attendants before the park owner allows people to enjoy the rides, whereas camping is an activity that generally needs little supervision.

Under these circumstances, the trial court correctly held that a reasonable person would not expect that the permission to use the campgrounds would extend to using a waterslide in the darkened water park long after it had closed for the night. We agree that appellant exceeded the scope of her campground invitation as a matter of law.

Once the invitee goes outside the area or scope of the invitation, her status may change. . If the invitee is involuntarily moved from the area encompassed by the original invitation onto another part of the land owners's premises, she might retain her status as an invitee. *Gladon, supra,* 75 Ohio St.3d at 322, 662 N.E.2d at 296 (Nader, J., concurring).[2] However, if the invitee voluntarily leaves the area to which the original invitation extends and goes into another area, then she loses her status as an invitee and becomes a licensee or mere trespasser, depending on whether she goes there with or without the consent or acquiescence of the owner. *Id.* at 315, 662 N.E.2d at 291–292.

Here, there is no question that appellant voluntarily left the campgrounds. Her status as an invitee was not extended by an involuntary act. Therefore, she was either a licensee or a mere trespasser. Under the second issue presented, appellant argues that she was a licensee, impliedly asserting that she had some form of permission to use the slide at that hour. We disagree.

Clearly, appellant had no express permission to use the waterslide. But consent to enter upon land can be implied. In the absence of express consent, the inquiry then becomes whether the entrant was confronted by appearances which would justify her inference that the owner had given tacit or implied permission to a person in a similar position to hers to enter the area in question, thus placing her in the category of licensee. See *Keesecker v. G.M. McKelvey Co.* (1943), 141 Ohio St. 162, 167, 25 O.O. 266, 268–269, 47 N.E.2d 211, 214. In other words, was her inference of implied permission to enter justified?

---

2. In *Gladon, supra,* the lead opinion relied·on the Restatement of the Law 2d, Torts (1965) 171–172, Section 339, Comment *c,* as authority for the proposition that the question whether the invitee exceeds the scope of his invitation either intentionally, negligently, or accidentally is immaterial to the issue of the entrant's status. *Id.* at 316, 662 N.E.2d at 292. These comments, which deal with the distinction between an intentional and unintentional trespass, were inapplicable to the facts of that case. While it is true that a person who unintentionally but voluntarily enters a new area that lies beyond the scope of her invitation can be considered a trespasser for premises liability purposes, the same should not be said of a person who exceeds the scope of the invitation both unintentionally and *involuntarily.*

In *Gladon,* the plaintiff bought a ticket to ride on the rapid transit train. He mistakenly got off at the wrong stop and was attacked and beaten by two men. He lost consciousness and somehow ended up on the tracks (he could not say if he jumped or if the men threw him there), where a train ran him over. Clearly, the plaintiff was an invitee while on the station platform. Although he had no permission to enter onto the tracks, it would be manifestly unfair to deprive him of his status as an invitee if the robbers had, in fact, thrown him onto the tracks. If that were the case, then the plaintiff would have involuntarily gone beyond the scope of the invitation to use the station platform, and he would still be an invitee. If the plaintiff decided by an act of his own volition to leap onto the tracks, then, arguably, he would have voluntarily gone beyond the scope of the invitation, and would not be considered an invitee. The problem in *Gladon* was that there was not enough evidence upon which the trial court could have ruled on the issue as a matter of law. The question whether Gladon went on the tracks voluntarily or involuntarily should have been submitted to the jury. See *Gladon, supra* (Nader, J., concurring).

Undoubtedly, the appearances of the slide that night did not justify appellant's belief that she was permitted to use it. It was well after dark, there were no lights, the stairway to the slide was blocked by a fence and the gate had been closed, no attendants were on duty, and the water had been shut off. Also, the water slide was separated from the campgrounds by certain physical barriers, and the central stair was enclosed by a fence. These appearances would lead a reasonable person to reach the opposite conclusion, that the water park and the slide were closed for the night. Under these circumstances, no jury question remained as to whether appellant had implied permission to use the slide.

■ By process of elimination, it is our position that appellant was a mere trespasser. "[A] landowner owes no duty to undiscovered trespassers other than to refrain from injuring [them] by willful or wanton [mis]conduct." *Elliott v. Nagy* (1986), 22 Ohio St.3d 58, 60, 22 OBR 77, 78, 488 N.E.2d 853, 854. "Willful" misconduct has been defined as conduct involving an intent or purpose to injure. *McKinney v. Hartz & Restle Realtors, Inc.* (1987), 31 Ohio St.3d 244, 246, 31 OBR 449, 450–451, 510 N.E.2d 386, 388–389. "Wanton" misconduct can be found only where the defendant failed to exercise any care whatsoever towards those to whom he owes a duty of care in circumstances where the failure to act creates great probability of harm. *Id.*

■ There is no evidence in this case that appellee desired to see appellant break her back. Also, appellee did not utterly fail to take actions to secure the slide against undiscovered trespassers. It hired night watchmen to patrol the grounds, who closed the gate, thereby blocking access to the slide. Whether these measures were sufficient under the circumstances is beside the point. Appellant failed to produce any evidence whatsoever upon which a reasonable jury could find that appellee acted in a willful or wanton manner towards her.

For these reasons, the trial court did not err by granting summary judgment to appellee. Accordingly, we affirm its judgment.

*Judgment affirmed.*

CHRISTLEY, J., concurs.

FORD, P.J., concurs with concurring opinion.

FORD, Presiding Judge, concurring.

While I concur with the analysis and conclusions reached by the majority with reference to the appellant's assignment of error and the two specific issues presented under that assignment, it is my view that a modest embellishment is

appropriate under the factual tableau presented here and the applicable provisions of law.

I unequivocally agree with the majority's analysis that the appellant voluntarily went beyond the scope of her initial status as a business invitee pursuant to the rationale expressed in *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 539 N.E.2d 614. Additionally, the primary difference between the duties owed to a trespasser and to a licensee is that there is no duty owed to a trespasser with respect to hidden dangers. *Jeffers.* Consequently, as a pragmatic matter, here there would be no difference in result with respect to the trial court's awarding of summary judgment in favor of the appellee, regardless of whether appellant is deemed to be a mere trespasser or licensee. Hence, I again wholeheartedly agree with the majority's analysis under the second issue of the assignment, that being that there was no hidden danger created here by the negligence of the appellee that could be viewed as the proximate cause of appellant's unfortunate injury. This embellishment is offered by this writer in the event that there may be disagreement as to our conclusion to the appellant's status as a mere trespasser at the time her injury was sustained.