DECISION.
{¶ 1} Plaintiff Paul Michael DuPriest, while at an estate sale, fell down a window well and shattered his ankle. He sued the defendants-appellants, the estate of Allen Sapp and its co-executors, Anthony Collins Sapp and Christopher Sapp Dawnson, and defendant-appellee Helping Hands Household Sales, Inc., the company hired to conduct the estate sale. Helping Hands and the estate each filed cross-claims against the other for indemnification and contribution. DuPriest settled with Helping Hands. The trial court ruled for Helping Hands on its cross-claim, and the estate now appeals. We affirm.
 {¶ 2} In early 1999, the attorney for the deceased's estate hired Helping Hands to conduct a sale of the items in the deceased's home. Helping Hands recommended a private sale and invited a specific group of potential buyers. DuPriest, an antique dealer who had attended previous estate sales managed by Helping Hands, received the following invitation:
 Private Sale
Sat. Sun. April 24th 25th — 6871 Ken Arbre — Exceptional Smalls and Large Empire and Victorian Pieces — (near intersection of Euclid Stewart Rd.) Both days 10-3.
 {¶ 3} The format of the sale by Helping Hands was that numbers would be given out at 8:00 AM, and that, beginning at 10:00 AM, the buyers would be let in by number, the lowest first. On the morning of the sale, DuPriest arrived at the house at 5:15 AM, and at 8:00 AM he received the number seven. After receiving his number, DuPriest drove to another estate sale, but he returned to the Sapp house sometime after 9:00 AM.
 {¶ 4} Upon returning, DuPriest decided to look in the house through the front windows to see what kind of items the estate had for sale. DuPriest testified that he often looked through the windows of a house prior to a sale to identify a particular item of interest and its location in the home, thus allowing him to go directly to the item and purchase it before any other buyer. Sis Alsfelder, co-owner of Helping Hands, testified that some people did on occasion look through windows into a house, but that it was not a customary practice and that Helping Hands did not encourage it.
 {¶ 5} After looking through the front window, DuPriest decided to check the side of the house to see if there was any yard furniture for sale and to look through the side windows of the house. DuPriest testified that the yard was overgrown and unkempt. Ken Jameson, the attorney for the estate, testified that he believed that the deceased had not maintained the outside of the property since 1995, other than hiring someone to cut the grass.
 {¶ 6} As DuPriest approached a side window, he stepped on what he thought was solid ground but was actually a window well covered by wire mesh that was overgrown with ivy and leaves. He fell about four and a half feet into the window well and landed with his weight on his right foot, shattering his right ankle.
 {¶ 7} The trial court originally ruled that DuPriest was a "trespasser" and granted summary judgment in favor of both the estate and Helping Hands. DuPriest appealed to this court, and we reversed the entry of summary judgment, holding that genuine issues of material fact remained as to DuPriest's legal status when he fell and the duty owed to him by the estate and Helping Hands. On remand, DuPriest settled with Helping Hands, and Helping Hands pursued its cross-claim against the estate for indemnification. The trial court held that DuPriest was an invitee and that the estate had breached its duty of care to him, but that Helping Hands had not breached any duty.
 {¶ 8} In its two assignments of error, the estate now argues that the trial court's rulings that DuPriest was an invitee and that the estate had breached its duty of care were against the manifest weight of the evidence. But judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.[1]
 {¶ 9} To prove a negligence claim, a plaintiff must show the existence of a duty, a breach of that duty, and an injury proximately caused by the breach.[2] In a premises-liability case, the duty of care owed by the owner or occupier of the premises depends upon the legal status of the injured party, as, unfortunately, "Ohio adheres to the common-law classifications of invitee, licensee, and trespasser."[3]
 {¶ 10} An invitee is a business visitor, or one who rightfully comes upon the premises of another by invitation, express or implied, for some purpose that is beneficial to the owner.[4] The landowner owes the invitee a duty to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition.[5] In addition, there is a duty to warn an invitee of latent or concealed perils on the property of which the landowner has knowledge or should have knowledge.[6]
 {¶ 11} The rights of an invitee are not absolute but are limited by the scope of the landowner's invitation.[7] If an invitee goes beyond the area that is reasonably considered to be part of the invitation, the invitee loses his status and becomes either a licensee or a trespasser, depending on whether he is there with the permission of the owner or occupier of the land[8]
 {¶ 12} The test for construing the scope of an invitation is objective and depends upon how a reasonable person would interpret the purpose for which the land is held open and the purpose for which the landowner or possessor wishes the visitor to enter.[9] Relevant considerations include the possessor's conduct, the nature of the business conducted on the premises, and the arrangement and design of the premises.[10]
 {¶ 13} As we stated in the previous appeal, there was no dispute that DuPriest would have been an invitee during the hours of the sale and while inside the house, where all of the sale items were located. Whether DuPriest was an invitee when he fell depended on whether it was reasonable for DuPriest to have believed that he was allowed to be on the side of the house in front of a window.
 {¶ 14} The owners of Helping Hands testified that certain people did look through windows before estate sales, and that they saw others besides DuPriest doing so that morning. DuPriest introduced into evidence the affidavits of three antique collectors who regularly attended estate sales. The collectors all stated that it was common practice for prospective buyers to walk around a home prior to an estate sale to look through windows and to locate desired items.
 {¶ 15} In addition, there was testimony that two other people attending the sale had peered through the same window that DuPriest had attempted to look through. Fortunately, those two individuals, who approached the window from the side and not through a thicket of branches, had realized that there was unsafe ground in front of the window and had not stepped on the wire mesh. Other evidence and testimony demonstrated that the yard was unkempt and that there was overgrown shrubbery in front of the window.
 {¶ 16} And finally, as the trial court noted in its decision, the invitation to the estate sale gave a description of items that could have been outdoor items. Thus it was reasonable for DuPriest and others to think that they could look around the outside of the house for sale items.
 {¶ 17} We conclude that a reasonable person would have believed that he or she was allowed to walk around the yard of the house before the estate sale and to look through the windows. Therefore, there was competent and credible evidence supporting the trial court's determination that DuPriest was an invitee, and we overrule the estate's first assignment of error.
 {¶ 18} We also conclude that the window well covered by wire mesh and by leaves and ivy was a concealed peril, and that the estate had a duty to, at the least, warn invitees of the danger. Because competent and credible evidence supported the trial court's ruling that the estate breached its duty of care to DuPriest, we overrule the estate's second assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Winkler, P.J., and Sundermann, J., concur.
[1] See C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus.
[2] See Armstrong v. Best Buy Co., 99 Ohio St.3d 79, 2003-Ohio-2573,788 N.E.2d 1088, ¶ 8.
[3] See Gladon v. Greater Cleveland Regional Transit Auth.,75 Ohio St.3d 312, 315, 1996-Ohio-137, 662 N.E.2d 287.
[4] Id.
[5] See Light v. Ohio Univ. (1986), 28 Ohio St.3d 66, 68,502 N.E.2d 611.
[6] See Westwood v. Thrifty Boy Super Markets, Inc. (1972),29 Ohio St.2d 84, 86-87, 278 N.E.2d 673.
[7] See Gladon v. Greater Cleveland Regional Transit Auth., supra.
[8] Id.
[9] See Conniff v. Waterland Inc. (1997), 118 Ohio App.3d 647, 651,693 N.E.2d 1127.
[10] Id.