OPINION
{¶ 1} Defendant-appellant Brian D. Flak appeals his convictions and sentences in the Ashland County Court of Common Pleas for one count of burglary in violation of R.C. 2911.12 (A)(3), a felony of the third degree, one count of theft in violation of R.C. 2913.02 (A)(1), a felony of the fifth degree, two (2) counts of receiving stolen property in violation of R.C. 2913.51(A), felonies of the fifth degree, one count of forgery in violation of R.C. 2913.31(A)(2), a felony of the fifth degree and one count of attempted petty theft in violation of R.C. 2913.31
(A)(2), a misdemeanor of the second degree. The plaintiff-appellee is the State of Ohio.
 {¶ 2} On January 8, 2004 Faith Proetti, a staff chaplain with Med Central Hospital in Mansfield, Ohio, arrived at work with her purse and responded to a death in the hospital. When she returned to her office, she found that her wallet had been stolen from her purse. She had several credit cards and driver's license missing even after the wallet was found in the restroom garbage can. Later that day, appellant entered Hawkins Grocery Store and purchased $460.46 of meat using Rev. Proetti's Target Visa Card. The appellant proceeded to walk to Buehler's Grocery Store and attempted to purchase a second large quantity of meat from that store. Appellant was unsuccessful at the Buehler's store after multiple credit cards were declined by the cashier.
 {¶ 3} On January 16, 2004, Sherry Byers was working at an Ashland pediatrician's office. She described the office as being open during the lunch hour. The office consisted of a large waiting room with a sliding glass window at the reception desk and a door which leads to the nurses' station, exam rooms, doctors' offices and the employee break/lunch room. A sign was placed during the lunch hour on the closed sliding glass window which read "CHPA Ashland. We are currently having lunch in the break room. Please come on back, the door is open." After lunch, the sliding glass window at the reception desk was open and the sign was crumpled in between the two sliding glass doors. Ms. Byers further testified that the intent of the sign is to direct people to open the door and announce his or her presence so that the staff could assist the individual.
 {¶ 4} After returning to her work station and noting the unusual occurrence of the sign being crumpled in the window, Ms. Byers received a call that her credit card had been used at Buehler's Grocery Store to purchase groceries. It was only then that she discovered the purse had been stolen over the lunch break. No one at the office reported having seen anyone enter the office during the lunch hour via the door connecting the waiting area to the back offices and lunch room. Security personnel testified that surveillance video showed a truck in which the appellant was a passenger arriving and departing the parking lot. The passenger of that truck is observed entering the medical building where Sherry Byer's purse was located and then returning to the truck prior to its leaving the medical building parking lot.
 {¶ 5} Appellant was apprehended at the Ashland Buehler's Grocery Store as his co-defendant, Charles Serafino, attempted a theft with a credit card stolen from Sherry Byers.
 {¶ 6} In addition to numerous witnesses who testified the appellant was in possession of the stolen credit cards and driver's licenses, co-defendant Charles Serafino testified against the appellant. Mr. Serafino testified that he and the appellant "worked together on going places and getting credit cards," and they did so on multiple occasions.
 {¶ 7} Mr. Serafino testified that appellant stole Faith Proetti's credit cards from Med Central on January 8, 2004. The pair then went on to a Kroger store where they used the cards to buy meat and then on to the Hawkins store in Ashland. Mr. Serafino further testified that he and the appellant went to Ashland Hospital next to Sherry Byer's building on January 16, 2004 and that he, Mr. Serafino, was driving the vehicle and the appellant was a passenger. Mr. Serafino further testified that appellant was going to "get some credit cards," and when he returned he had a purse in his coat pocket. Appellant then provided Mr. Serafino a credit card and the pair went on to the Buehler's Market.
 {¶ 8} After his arrest, appellant was booked into the jail and his property was inventoried by jail staff. Reverend Proetti's driver's license and her husband's Citgo Plus Card were found to be hidden in his shoes.
 {¶ 9} The matter proceeded to a jury trial April 14, 2004. The jury returned a guilty verdict on all counts on April 16, 2004. The trial court deferred sentencing and ordered a pre-sentence investigation report. A sentencing hearing took place on May 17, 2004. The trial court sentenced appellant to one year in prison on the count of burglary, six month imprisonment on the count of theft, six months imprisonment for each of the two counts of receiving stolen property, six months imprisonment on the theft count and 30 days of local incarceration on the attempted petty theft count. The court ordered the misdemeanor sentence to run concurrent with the felony sentence and further ordered counts one through five to be served consecutively for an aggregate sentence of three years.
 {¶ 10} Appellant timely filed his notice of appeal and raises the following three assignments of error:
 {¶ 11} "I. The state failed to present legally sufficient evidence for the crime of burglary to support defendant-appellant's conviction.
 {¶ 12} "II. The trial court erred in sentencing defendant-appellant to a term of imprisonment.
 {¶ 13} "III. The trial court erred in sentencing appellant to consecutive sentences."
 I. {¶ 14} In his First Assignment of Error, appellant maintains that his conviction for Burglary is against the weight of the evidence. Specifically, the appellant asserts a failure of evidence on the trespass element of that offense. We disagree.
 {¶ 15} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 16} Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 17} In State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id., paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., paragraph four of the syllabus; State v. Miller (2002),96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.
 {¶ 18} In the indictment in the case at bar, appellant was charged with Burglary in violation of R.C. 2911.12(A) (3), which states:
 {¶ 19} "A) No person, by force, stealth, or deception, shall do any of the following: * * *
 {¶ 20} "(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense * * *"
 {¶ 21} The question here is whether, under R.C. 2911.12, the appellant can be said to have "trespassed in an occupied structure . . . or in a separately secured or separately occupied portion thereof. . . ." InState v. Barksdale (1983), 2 Ohio St.3d 126, 443 N.E.2d 501, the Supreme Court looked to the language of the criminal trespass statute, R.C.2911.21, in addressing the trespass element of a burglary offense. InBarksdale, the court held that the defendant's presence on an automobile dealer's lot was not the result of a trespass, since the dealer's tacit invitation extended the general public to visit the lot constituted a grant of "privilege." Since the defendant's presence was privileged, he had not trespassed and therefore could not be prosecuted for burglary. Applied here, Barksdale compels our holding that the appellant's conviction for burglary may not be justified merely on the basis of his entering the patient entrance of the pediatric offices. Like an automobile dealer, a doctor's office could impliedly extend to the general public an invitation to enter. The appellant, then, being so "privileged", cannot be held criminally liable for burglary insofar as such a prosecution is based on his entering the patient waiting area itself.
 {¶ 22} Appellant further argues that he was entitled to open the door and enter what is normally a restricted area due to the posting of the sign in the sliding glass window at the reception area workstation.
 {¶ 23} Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner. Light v. Ohio Univ. (1986), 28 Ohio St.3d 66, 68, 28 OBR 165, 167, 502 N.E.2d 611, 613; Scheibel v. Lipton (1951),156 Ohio St. 308, 46 O.O. 177, 102 N.E.2d 453, paragraph one of the syllabus.
 {¶ 24} The status of an invitee is not absolute but is limited by the landowner's invitation. "* * * [T]he visitor has the status of an invitee only while he is on the part of the land to which his invitation extends — or in other words, the part of the land upon which the possessor gives him reason to believe that his presence is desired for the purpose for which he has come . . ." Gladon v. Greater Cleveland Regional TransitAuth. (1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287, 291-292, quoting 2 Restatement of the Law 2d, Torts (1965) 181-182, Section 332, Comment l.
 {¶ 25} The scope of the invitation can be exceeded if the person leaves that portion of the premises which he or she has been invited to enter and goes to a different part of the premises. Gladon, supra, at 315, 662 N.E.2d 287. The test for considering the scope of the invitation is objective and depends upon how a reasonable person would interpret the purpose for which the land is held open and for which the possessor desires persons to enter. Conniff v. Waterland, Inc. (1997),118 Ohio App.3d 647, 651, 693 N.E.2d 1127. Relevant considerations include the possessor's conduct, the nature of the business conducted on the premises, and the arrangement and design of the premises. Id.
 {¶ 26} In the case at bar, the State presented evidence that the sign in question was put in place over the lunch hour for the convenience of patients of the medical center. (2T. at 280). Patients would sometimes come in to pick up forms, prescriptions, or to make an appointment. (Id.). The area consisted of examination rooms, a nurse's station and an employee break/lunch room. There is no evidence that the public at large was invited into this normally restricted area to wander around unattended; rather the evidence indicates a reasonable person would interpret the signage to extend an invitation only to patients or persons who had business with the pediatric office. There is no evidence that appellant had a legitimate reason to visit the pediatric office. Thus a reasonable person could find that appellant's entry into the area normally restricted and closed both to the general public and, also to the patients of the pediatric office during normal working hours, exceeded the scope of the invitation and therefore appellant ceased to be a business invitee and became a trespasser.
 {¶ 27} In the alternative, the State presented evidence that appellant did not enter the restricted area via the authorized means of the door; rather appellant either reached inside the sliding glass window in the reception area or climbed through the sliding glass window to accomplish the theft. Thus, a reasonable person could find that appellant was not privileged to enter the restricted area by means not authorized by the invitation, and was therefore a trespasser.
 {¶ 28} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of burglary.
 {¶ 29} We hold, therefore, that the state met its burden of production regarding each element of the crime of burglary and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 30} Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 31} Appellant's first assignment of error is overruled.
 II. {¶ 32} In his Second Assignment of Error, appellant maintains that the trial court erred in sentencing appellant to a term of imprisonment. We disagree.
 {¶ 33} After the enactment of Senate Bill 2 in 1996, an appellate court's review of an appeal from a felony sentence was modified. Pursuant to present R.C. 2953.08(G) (2): "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court. The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for re-sentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion.
 {¶ 34} The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 35} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E) (4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
 {¶ 36} "(b) That the sentence is otherwise contrary to law."
 {¶ 37} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 38} When reviewing a sentence imposed by the trial court, the applicable record to be examined by the appellate court includes the following: (1) the presentence investigation report; (2) the trial court record in the case in which the sentence was imposed; and (3) any oral or written statements made to or by the court at the sentencing hearing at which the sentence was imposed. R.C. 2953.08(F) (1) through (3). The sentence imposed, by the trial court, should be consistent with the overriding purposes of felony sentencing: "to protect the public from future crime by the offender" and "to punish the offender."
 {¶ 39} Pursuant to R.C. 2929.14(B), when imposing a nonminimum
sentence on a first offender, a trial court is required to make its statutorily sanctioned findings at the sentencing hearing. State v.Comer (2003), 99 Ohio St. 3d 463, paragraph two of the syllabus. In Statev. Edmonson (1999), 86 Ohio St. 3d 324, which is cited in Comer, supra, at 469, the Ohio Supreme Court gave the following guidance: "By contrasting this statute [R.C. 2929.14(B)] with other related sentencing statutes, we deduce that the verb `finds' as used in this statute means that the court must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." Id. at 326. However, also citing State v. Edmonson (1999),86 Ohio St.3d 324, 715 N.E.2d 131, syllabus, the Comer court concluded, however, that "R.C. 2929.14(B) does not require that the court give its reasons for finding that the seriousness of the offense will be demeaned or the public not adequately protected if a minimum sentence is imposed." Id. at ¶ 26, fn. 2, 793 N.E.2d 473.
 {¶ 40} In the case at bar, appellant received the minimum sentences for each of his convictions. Accordingly, the trial court was not required to give its reasons for finding that the seriousness of the offense will be demeaned or the public not adequately protected.
 {¶ 41} Appellant was convicted of one count of Burglary in violation of R.C. 2911.12(A) (3), a felony of the third degree.
 {¶ 42} The sentencing guidelines in R.C. 2929.12(C) do not provide a preference of either a prison sentence or community control for third degree felonies. A defendant has no appeal as of right merely because a prison term is imposed for a third degree felony under R.C. 2929.13(C). R.C. 2953.08(A).
 {¶ 43} To decide whether to impose a prison sentence for a third degree felony, R.C. 2929.13(C) directs a trial court to comply with the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors defined in R.C. 2929.12. As appellant had not previously served a prison term, the R.C. 2929.14 (B) suggestion of the appropriateness of the shortest authorized prison term does apply to this case. As previously mentioned, appellant was given the shortest authorized prison term for each of his offenses. Therefore, the trial court judge satisfied R.C. 2929.14(B) during the sentencing hearing by orally stating on the record that appellant has failed to respond favorably in the past to non-prison sanctions, has had 15 prior theft convictions, of which 10 were reduced to misdemeanors and multiple probation violations. (3T. at 578). See, State v. Veres (Aug. 6, 2004), 6th Dist. No. S-03-030.
 {¶ 44} In the case at bar, the court based its decision to impose a prison sentence in appellant's case in part on the pre-sentence investigation report prepared by the probation department. (3T. at 574).
 {¶ 45} We note that we do not know the specific contents of the pre-sentence investigation report or any of the victim impact statements as appellant did not make them a part of the record
 {¶ 46} Appellant has the responsibility of providing the reviewing court with a record of the facts, testimony, and evidentiary matters which are necessary to support the appellant's assignments of error.Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 409, 629 N.E.2d 500,506; Volodkevich v. Volodkevich (1989), 48 Ohio App.3d 313, 314,549 N.E.2d 1237, 1238-1239. This principle is recognized in App.R. 9(B), which provides, in part, that `* * * the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record. * * *. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to the assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199, 400 N.E.2d 384, 385. If a partial record does not conclusively support the trial court's decision, it is presumed that the omitted portion provides the necessary support. Wozniak,90 Ohio App.3d at 409, 629 N.E.2d at 506; In re Adoption of Foster
(1985), 22 Ohio App.3d 129, 131, 489 N.E.2d 1070, 1072-1073.
 {¶ 47} In State v. Untied (Mar. 5, 1998), Muskingum App. No. CT97-0018, we addressed the issue of failure to include the pre-sentence investigation report and stated:
 {¶ 48} "Appellate review contemplates that the entire record be presented. App.R. 9. When portions of the transcript necessary to resolve issues are not part of the record, we must presume regularity in the trial court proceedings and affirm. Knapp v. Edwards Laboratories
(1980), 61 Ohio St.2d 197, 400 N.E.2d 384. The pre-sentence investigation report could have been submitted "under seal" for our review.
 {¶ 49} "Without the cited information and given the trial court (sic) findings on the record, we cannot say appellant's sentence was against the manifest weight of the evidence or `contrary to law." Id. at 7.
 {¶ 50} We reach the same conclusion, in the case sub judice, because appellant failed to include in the record the pre-sentence investigation reports and the victim impact statements.
 {¶ 51} Appellant's Second Assignment of Error is overruled.
 III. {¶ 52} In his Third Assignment of Error, appellant maintains that the trial court did not make the required findings in order to impose consecutive sentences. We agree.
 {¶ 53} In order to impose consecutive sentences, a trial court must comply with R.C. 2929.14 (E) (4) and R.C. 2929.19 (B) (2) (c). R.C. 2929.14
(E) (4) states as follows: "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 54} "(a) The offender committed one or more multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to Sections 2929.16, 2929.17, 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 55} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 56} "(c) The offender's history of criminal conduct demonstrates the consecutive sentences are necessary to protect the public from future crimes by the offender."
 {¶ 57} Revised Code 2929.19 (B) (2) (c) requires that a trial court state its reasons for imposing consecutive sentences.
 {¶ 58} In State v. Comer, 99 Ohio St. 3d 463, 2003-Ohio-4165, the Supreme Court held a trial court is required to make its statutorily enumerated findings and give reason supporting those findings at the sentencing hearing.
 {¶ 59} In Comer, supra, the Ohio Supreme Court discussed consecutive sentences and stated:
 {¶ 60} "A court may not impose consecutive sentences for multiple offenses unless it `finds' three statutory factors. R.C. 2929.14(E) (4). First, the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. * * * Second, the court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. * * * Third, the court must find the existence of one of the enumerated circumstances in R.C. 2929.14(E) (4) (a) through (c)." (Emphasis sic.) Id. at ¶ 13, 793 N.E.2d 473.
 {¶ 61} Thus, the Court in Comer, supra, concluded that "[p]ursuant to R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing." Comer at paragraph one of the syllabus.
 {¶ 62} In the case at bar, the trial court, after reviewing the pre-sentence investigation report, stated: "This court does find, due to the serious prior theft record, the scheme and plan involved in these particular offense, the multiple probation violations all indicate that consecutive prison terms are necessary here, under Section 2929.14(E)(4), to protect the public, that they are not disproportionate to other similar sentences, and that the criminal history is such that consecutive sentences are necessary to protect the public." (3T. at 578).
 {¶ 63} The State concedes that these findings are insufficient.
 {¶ 64} Accordingly, appellant's Third Assignment of Error is sustained.
 {¶ 65} For the foregoing reasons, the judgment of the Court of Common Pleas of Ashland County, Ohio, is affirmed in part and reversed in part. The appellant's consecutive sentences are reversed and the cause is remanded to the trial court for further proceedings in accordance with the law and consistent with this opinion for resentencing pursuant toComer, supra.
Gwin, P.J., Farmer, J., and Wise, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Ashland County, Ohio, is affirmed in part and reversed in part. The appellant's consecutive sentences are reversed and the cause is remanded to the trial court for further proceedings in accordance with the law and consistent with this opinion for re-sentencing pursuant to Comer, supra. Costs to appellant.